# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 15, 2019        Decided March 26, 2019

No. 18-7031

IN RE: DEPOSITION OF MATTHEW A. LEFANDE, ESQ.,

UNITED STATES,
APPELLEE

v.

MATTHEW AUGUST LEFANDE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-mc-02466)

———

*Matthew August LeFande*, *pro se*, argued the cause for appellant. On the briefs was *Horace L. Bradshaw Jr.*

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: MILLETT and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:   Matthew LeFande appeals an order summarily holding him in criminal contempt for refusing a magistrate judge's orders to take the witness stand and be sworn for in-court questioning on the record in lieu of an ordinary, out-of-court deposition in a civil action.   LeFande served as counsel for defendants in an underlying civil case, *District Title v. Warren*, No. 14-1808 (D.D.C.).   After the district court in that case entered judgment against LeFande's clients for nearly $300,000, District Title sought to enforce its judgment.   To that end, it wanted to depose LeFande because District Title had reason to believe he knew about and may have aided his clients' transfer of assets to New Zealand to evade the judgment.  Numerous attempts to serve LeFande with a subpoena failed.   When LeFande appeared before the magistrate judge for a status conference, she ordered him orally, by minute order, and by separate written order to appear in court and take the witness stand for questioning under the court's supervision.   LeFande appeared with his counsel on the date ordered, but repeatedly refused to take the stand, citing attorney-client and Fifth Amendment privileges, among other objections.   The magistrate judge accordingly found him in criminal contempt and imposed a fine of $5,000.   The district court overruled LeFande's objections and confirmed the magistrate judge's criminal contempt order.

On appeal, LeFande asks us to vacate the contempt order and enter a protective order shielding him from future demands for his deposition.   He argues that the district court lacked subject-matter jurisdiction over the post-judgment discovery proceeding for which it sought his deposition because one of the judgment debtors died and the other filed for bankruptcy; that it lacked personal jurisdiction over him because he was never served with a subpoena; that the order to testify violated the attorney-client privilege; and that District Title sought the

discovery for an improper purpose. Because none of those arguments has merit, we affirm the criminal contempt order.

## I. Background

This litigation saga started when funds transferred as part of a real estate transaction went to the wrong person. In 2014, Anita Warren sold a piece of real estate through District Title, a real estate settlement company. District Title mistakenly transferred more than half of the proceeds of the sale—$293,514.44—to Warren's bank account rather than to her mortgage lender, Wells Fargo Bank. Warren promptly transferred the funds to her son, Timothy Day.

When Warren and Day refused to return the money, District Title filed suit in District of Columbia Superior Court to recover it. LeFande, representing Warren and Day, removed the action to the United States District Court on diversity grounds. *See* 28 U.S.C. § 1441.

District Title moved for a preliminary injunction to prevent Warren and Day from transferring any of their real or personal property and to require them to seek court approval to disburse funds for their living expenses, health expenses, or other necessities. The next day, Timothy Day sold a house he owned in Saint Mary's County, Maryland, for a below-market price. District Title contends that LeFande counseled Day in that matter, and that LeFande was involved in the transfer of the funds from that sale to a bank account in New Zealand. A few weeks later, the district court entered a preliminary injunction forbidding Warren and Day from transferring or dissipating their assets and requiring them to account for all their assets, withdrawals, and transfers, while District Title's collection action was pending and their debt not otherwise secured. *Dist. Title v. Warren*, 181 F. Supp. 3d 16, 29-30 (D.D.C. 2014). We affirmed the preliminary injunction. *Dist.*

*Title v. Warren*, 612 F. App'x 5 (D.C. Cir. 2015). Following discovery into District Title's underlying breach-of-contract and unjust enrichment claims, the district court entered summary judgment in favor of District Title in the amount of $293,514.44 and permanently enjoined Warren and Day from "dissipating their assets until the judgment is satisfied." *Dist. Title v. Warren*, No. 14-1808 (ABJ), 2015 WL 7180200, at *10 (D.D.C. Nov. 13, 2015). We again affirmed. *Dist. Title v. Warren*, No. 15-7157, 2016 WL 3049558 (D.C. Cir. May 4, 2016).

Meanwhile, District Title moved under Federal Rule of Civil Procedure 69(a)(2) to conduct post-judgment discovery to support collection on the judgment. As relevant here, District Title requested leave to issue subpoenas *ad testificandum* and *duces tecum* to LeFande, who it asserted "may have information concerning assets held or transferred by Timothy Day," particularly the St. Mary's property proceeds. Supplemental Appendix (S.A.) 95-96. Before the district court acted on that motion, in April 2017 LeFande filed a "Suggestion of Death" to notify the court and District Title that Day had recently died.

Soon thereafter, District Title moved for an order to show cause as to why LeFande should not be held in contempt for violating the district court's injunction, and renewed its request for leave to issue a subpoena to LeFande. *See* S.A. 127-32. In support of its motion, District Title offered evidence that LeFande had "actively participated" in concealing Day's assets by instructing the settlement company involved in Day's sale of his Saint Mary's property to transfer the proceeds to a New Zealand bank account. S.A. 129-30; *see also* S.A. 135-42. LeFande opposed the motion and sought a protective order to prevent his deposition, citing, *inter alia*, Fifth Amendment and attorney-client privileges.

5

The magistrate judge to whom the district court had assigned the post-judgment discovery, *see Dist. Title v. Warren*, 265 F. Supp. 3d 17, 20 n.3 (D.D.C. 2017), granted District Title's request for issuance of a subpoena to LeFande and denied LeFande's motion for a protective order on the ground that he lacked any basis to avoid deposition and would have to assert any relevant privileges on a question-by-question basis. *Dist. Title v. Warren*, No. 14-1808 (ABJ/DAR), 2017 WL 2462489, at *5 (D.D.C. June 2, 2017). The district court enforced the magistrate judge's order and affirmed that "LeFande must sit for the deposition" and assert any applicable privileges in response to specific questions. *Dist. Title*, 265 F. Supp. 3d at 22-23.

District Title's ensuing efforts to obtain LeFande's deposition were thwarted by their determinedly uncooperative object. *See* S.A. 212-14. LeFande did not respond to opposing counsel's repeated letters sent by overnight delivery and email, nor to several visits by the process server to LeFande's home, all attempting to schedule the deposition. The process server tried six times to serve LeFande in person, leaving multiple notes seeking a convenient time, and twice saw a vehicle matching the housekeeper's description of LeFande's car make "a U-turn at the top of the cul-de-sac" once it was close enough to see the process server's car waiting near LeFande's house. *See* S.A. 229-30. When District Title sought to schedule the deposition without formal service, LeFande refused to cooperate and failed to appear for the noticed deposition. *See* S.A. 213.

The magistrate judge then ordered the parties to appear for a September 15, 2017, status conference. At that conference, with LeFande present and represented by counsel, the magistrate judge ordered LeFande to appear in court for his deposition on September 21, 2017—a date agreed to by both

parties' counsel—and reiterated the court's earlier instruction that the basis for any privilege objection to a particular question be stated on the record at that time. The magistrate judge made that order orally in open court, then memorialized it in a minute order, and also issued a separate written order to the same effect.

Three days later, LeFande moved to dismiss the post-judgment proceedings with respect to Day, asserting that District Title's failure to identify a personal estate representative to replace Day within ninety days following the notice of his death warranted dismissal of the underlying action under Federal Rule of Civil Procedure 25(a). The district court entered an order noting that it would "rule on the motion in due course," but that the order directing LeFande to testify remained in effect because the post-judgment discovery District Title sought from LeFande related to claims against both judgment creditors and no grounds had been raised to dismiss the case against Warren. Joint Appendix (J.A.) 85. The next day, LeFande filed for bankruptcy on Warren's behalf, triggering an automatic stay of any attempt to enforce the judgment against her. *See* 11 U.S.C. § 362.

The day before LeFande's scheduled deposition, the district court denied the motion to dismiss the claims against Day's estate, noting that it appeared "to be one of a number of recent steps taken by [LeFande] in an effort to avoid complying with orders of this Court." *Dist. Title v. Warren*, No. 14-1808 (ABJ), 2017 WL 6816482, at *1 (D.D.C. Sept. 20, 2017). Because neither LeFande nor his counsel, who filed the motion, represented Day's estate, the court held that they lacked standing to seek dismissal under Rule 25(a), and that a death notice neither filed by nor identifying a successor or representative of the estate did not trigger Rule 25(a)'s ninety-day time limit. *See id.* at *3-4. The court concluded that

LeFande "remain[ed] under Court order to appear for a deposition" in court the next day. *Id.* at \*4. The court cautioned that "[f]ailure to attend and to respond on a question by question basis will be a direct violation of the Magistrate Judge's September 15, 2017 order, and this Court's orders of September 18 and today." *Id.* at \*3.

LeFande appeared in court, but repeatedly refused the court's orders to take the stand to be questioned. *See* J.A. 95-100. He said: "I appear here under duress. I have never been served in this case. I am not a party in this case." J.A. 98-99. After offering him multiple opportunities to comply with the order to testify, the magistrate judge held LeFande in criminal contempt and imposed a $5,000 criminal contempt fine under 28 U.S.C. § 636(e)(2).

LeFande moved the district court to vacate the criminal contempt order; the district court affirmed the magistrate judge's order. *In re Deposition of LeFande*, 297 F. Supp. 3d 1 (D.D.C. 2018). The district court explained that LeFande could "not avoid appearing at the deposition entirely with a blanket assertion of attorney-client privilege," but instead "was required to take the stand and to assert both the Fifth Amendment privilege and the attorney-client privilege on a question-by-question basis." *Id.* at 5. The court further found that "all of the elements required to uphold the criminal contempt order" were met. *Id.* LeFande "not only disobeyed the Magistrate Judge's multiple orders in the courtroom in her presence, but he also failed to comply with the opinions and orders of this Court which required him to appear to and respond to the questions on an individual basis," impeding the administration of justice. *Id.* at 5-6. The court added that the evidence in the case was "sufficient to establish beyond a reasonable doubt that LeFande had the necessary intent, and

that his actions were both calculated and willful." *Id.* at 6 (internal quotation marks omitted).

LeFande timely appealed to this court, and then moved to strike District Title as an appellee, contending that the United States was the only proper appellee to defend the validity of a criminal contempt order. *See* Mot. to Strike Named Appellee, No. 18-7031 (D.C. Cir. Mar. 19, 2018). We granted the United States' motion to substitute itself for District Title on the contempt appeal. *See* Order, No. 18-7031 (D.C. Cir. Aug. 22, 2018).

## II. Analysis

Magistrate judges "have the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice." 28 U.S.C. § 636(e)(2). We review a criminal contempt citation by asking "whether a fair-minded and reasonable trier of fact could accept the evidence as probative of a defendant's guilt beyond a reasonable doubt." *In re Sealed Case*, 627 F.3d 1235, 1237 (D.C. Cir. 2010) (internal quotation marks and alterations omitted) (quoting *In re Holloway*, 995 F.2d 1080, 1082 (D.C. Cir. 1993)).

That standard is readily met here. LeFande does not dispute that, in the magistrate judge's presence, he willfully violated her orders to submit to in-court questioning on the record. He argues instead that (1) the district court lacked subject-matter jurisdiction over the underlying post-judgment discovery proceedings; (2) the court lacked personal jurisdiction over him because he was never served with a subpoena; (3) the order to testify violated the attorney-client privilege; and (4) the discovery was "inappropriate" and sought

for an "improper" purpose. Appellant's Br. 17, 30, 34, 41, 44. Each argument is without merit.

*First*, the district court indisputably had jurisdiction over the underlying action, *see* S.A. 1 (notice of removal, filed by LeFande, setting forth the basis for removal jurisdiction based on diversity of citizenship), which included proceedings to enforce that judgment, *see* Federal Rule of Civil Procedure 69(a)(2). In any event, subject-matter jurisdiction over an underlying action is not a precondition of a federal court's authority to sanction those who violate its orders. LeFande argues that judgment cannot be executed against a debtor in bankruptcy or a dead party, and that the district court therefore lacked subject-matter jurisdiction to pursue discovery in aid of its judgment against his clients. Leaving the merits of those claims aside, the Supreme Court has specifically "upheld a criminal contempt citation even on the assumption that the District Court issuing the citation was without jurisdiction over the underlying action." *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)) (upholding Rule 11 sanctions imposed by a court found in the interim to have lacked subject-matter jurisdiction). That is because a criminal contempt charge is "a separate and independent proceeding at law that is not part of the original action," enabling a court to "make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (internal quotation marks omitted). So, even when "the basic action has become moot," "[v]iolations of an order are punishable as criminal contempt." *United Mine Workers*, 330 U.S. at 294; *accord Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 451 (1911). LeFande's violation of the district court's orders are likewise punishable as criminal contempt,

regardless of the court's subject-matter jurisdiction over post-judgment discovery.

*Second*, there is no question that the district court has personal jurisdiction over LeFande based on his nexus with the forum and the case. His objection is that, "[a]bsent service of process, the District Court was without personal jurisdiction over Attorney LeFande." *See* Appellant's Br. 30. That is his central service-based objection, and it is entirely misdirected. "Although questions of service of process" and personal jurisdiction "often are closely intertwined, service of process is merely the means by which the district court, having a sufficient basis for jurisdiction . . . asserts [it] over the party . . . and affords her due notice of the commencement of the action." 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1083 (4th ed. 2018). This is not a case in which service within the forum was the basis of the court's personal jurisdiction. *Cf. Burnham v. Superior Court*, 495 U.S. 604 (1990). Contrary to LeFande's contention, the lack of a subpoena had no effect on the court's personal jurisdiction over him, which is well established in accordance with statutory and constitutional requirements.

As a statutory matter, "[i]n a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004). The District of Columbia's long-arm statute gives the courts here jurisdiction "over a person" such as LeFande "as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia," including the business of representing clients. *See* D.C. Code § 13-423(a)(1). As a member of the District of Columbia bar, LeFande voluntarily appeared in our courts as counsel of record for Day and Warren in *District Title*, and it was his representation in that case that

gave rise to the court's order to submit to questioning on the record. The long-arm provision constitutionally applies here. LeFande's acts of deliberately transacting business in the District—by joining the D.C. bar and appearing as counsel for private clients in courts within the District—established "minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

LeFande's briefs in this court do not clearly object to the absence of subpoena service *per se*, other than as a ground for want of personal jurisdiction, but to the extent that he raises it, the argument fails in any event on the unusual facts of this case. For an ordinary deposition of a witness with no other involvement in a case, service of a subpoena is the means by which compulsory jurisdiction is formally asserted over the deponent and notice given. *See* 9A Wright & Miller, *supra*, § 2460. But this was not an ordinary deposition. LeFande, an officer of the court and counsel in the underlying case, had repeatedly failed to cooperate in scheduling his deposition. In that rare and confounding context, the magistrate judge on September 15 issued her oral, in-court order to LeFande, as he personally stood before her, and confirmed both by minute order on the docket and separate written order the requirement that he appear on September 21 for his in-court deposition.

We recognize that "[w]hen as here, the issue is the propriety of a particular technique of serving a particular type of process"—such as compelling a witness to appear to testify—"neither subject matter jurisdiction nor personal jurisdiction in either the 'power' or the 'notice' sense is directly at issue." *FTC v. Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1319 (D.C. Cir. 1980). For the

reasons just described, the court had "power"—jurisdiction—over LeFande.  And it also gave LeFande clear notice of the purpose for which the court sought his appearance, far enough in advance to permit him to procure representation, prepare, and file a motion to quash.  LeFande does not claim otherwise.  Yet he did not object to the oral order directing his appearance even though his personal counsel was present with him, *see* Supplemental Order (Regarding the Appearance of Counsel for Mr. LeFande) (Sept. 15, 2017) (S.A. 234), nor did he file a motion to quash the order directing his appearance.  In fact, he timely appeared on the appointed date with counsel, and was physically present in court at the time of the disputed contempt citation.

Again, although LeFande did not specifically raise the point on appeal, we think the form of the judge's in-person order sufficed to compel LeFande to give testimony.  *Cf. Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("One becomes a party officially . . . only upon service of a summons *or other authority-asserting measure* . . . .") (emphasis added).  Compulsory process—in contrast to a civil complaint—generally "may be served upon an unwilling witness only in person," because, should a witness fail to comply with a properly served subpoena, "the full enforcement power of the federal courts may immediately be brought to bear upon him" in the form of contempt proceedings.  *Compagnie De Saint-Gobain-Pont-a-Mousson*, 636 F.2d at 1313.  Here, no subpoena was successfully served on LeFande's person.  *See* J.A. 71-72 (affidavit regarding multiple service attempts).  Instead, the judge issued an order to LeFande in person summoning him to return at the specified time to give his deposition testimony under the court's supervision.  As every lawyer knows, a court order is backed by the contempt power.  LeFande points to nothing at the hearing or in the intervening six days reflecting any objection to the order to appear on

grounds of lack of personal subpoena service. Given LeFande's recalcitrance and his status as an officer of the court, the court's in-person issuance of the deposition order was a sufficiently formal way to assert the compulsory power of the court over him such that the lack of a personally served subpoena under Rule 45 has no effect on the validity of the court's contempt citation. We express no general approval, beyond the unusual circumstances of this case, of a court order as an adequate substitute for a subpoena.

*Third*, LeFande's objection that the order to testify violated the attorney-client privilege is contrary to circuit law, and to the magistrate judge's and district judge's prior orders applying that precedent to LeFande. LeFande bore the burden to establish any claim of privilege in the context of a specific pending question from District Title; a "blanket assertion of the privilege [does] not suffice." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998). LeFande did not come close to meeting his burden. He made no showing that he could not have preserved any claims of privilege his clients may have had while also complying with the court's order. As the court had earlier specified in rejecting LeFande's blanket assertion of privilege, the correct process for asserting any relevant privileges was to take the stand and assert the claim and its basis in response to questions eliciting information LeFande believed to be privileged. LeFande did not even attempt to defend his wholesale refusal by showing, for example, that District Title sought only privileged information—nor could he have, as the discovery plainly swept more broadly. *See* S.A. 226-28, 244-53 (District Title sought documents and proposed questions probing information other than communications between LeFande and his clients).

LeFande asserts that District Title failed to establish the crime-fraud exception to the attorney-client privilege, but the

existence of a privileged communication is a precondition to any need to establish the crime-fraud exception. *See In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). District Title had no obligation to establish any exception unless and until LeFande appeared and properly asserted a valid claim of privilege. The criminal contempt order addresses LeFande's refusal at that predicate step, to which his crime-fraud argument is no defense.

*Fourth*, the validity of the contempt order is unaffected by LeFande's assertion that District Title sought to depose him for the "improper purpose" of driving a "wedge between Attorney LeFande and the then remaining indigent co-Defendant, in order to deprive that party of legal representation." Appellant's Br. 41-42. As we explained when we substituted the United States for District Title to defend the contempt order, the contempt citation is not about District Title; it "was entered to vindicate the judicial power of the United States." Order at 1, No. 18-7031 (D.C. Cir. Aug. 22, 2018) (citing *United States v. Providence Journal Co.*, 485 U.S. 693, 700 (1988)). In any event, there is no record basis for LeFande's effort to impugn District Title's purpose for questioning him.

*Finally*, LeFande's argument that discovery as to the Saint Mary's County property transaction is "inappropriate" makes no sense. Appellant's Br. 44. Whatever the merit—or not—of LeFande's objections to particular discovery orders, he may not refuse to comply with an order of the court just because he disagrees with it. As spelled out above, a "criminal contempt charge is . . . a separate and independent proceeding at law that is not part of the original action." *Cooter & Gell*, 496 U.S. at 396 (internal quotation marks omitted).

15

*   *   *

Because none of LeFande's objections has merit, we affirm the order holding him in criminal contempt of court.

*So ordered.*